56      UNITED STATES ex rel. STEINMETZ v. ALLEN.

Syllabus.                                [22 App.

# UNITED STATES ex rel. STEINMETZ v. ALLEN.*

MANDAMUS; PATENTS; APPEAL FROM PRIMARY EXAMINER; DIVISION OF
  CLAIMS; PROCESS AND APPARATUS; DEFINITIONS OF; PATENT PRACTICE,
  RULES OF; COMMISSIONER OF PATENTS, POWERS OF.

1. On a petition for mandamus against the Commissioner of Patents to
compel him to direct the primary examiner to answer and forward the
petitioner's appeal to the examiners-in-chief, in order that the latter
may review his action, it is incumbent upon the petitioner to show
clearly and affirmatively that he had a right to appeal, and that he is.
entitled to the writ to enforce that right.

2. Where the primary examiner requires a division, under rule 41 of the
Patent Office, of the process claims and the apparatus claims in an
application for a patent, refusing to act upon the merits of the appli-
cation until the division is made, an appeal from his action to the
examiners-in-chief does not lie, but his action may be reviewed on a
petition to the Commissioner under rule 45; and the Commissioner's.
action on such a petition, as it does not involve the merits and
final rejection of the claims, is final, and not reviewable by this court.
Mandamus will not, therefore, lie to compel the Commissioner, under
such circumstances, to direct the primary examiner to answer and
forward the applicant's appeal to the examiners-in-chief; construing
§§ 481, 482, 4909 and 4910, U. S. Rev. Stat. (U. S. Comp. Stat. 1901,
pp. 271, 272, 3390, 3391) and rules 41, 42, 45, 133, and 134 of the
Patent Office.

3. A process, within the meaning of the patent law, is the mode of treat-
ment of certain materials to produce a certain result, and consists of
an act or series of acts performed upon the subject-matter to be trans-
formed and reduced to a different state of things; while a machine or
apparatus is a combination of mechanical elements, which may or may
not be useful in performing the acts which constitute the process.

4. The rules of practice of the Patent Office, when not inconsistent with
the statutes relating to the patent system, have the force and effect of
law in all matters to which they relate, and are not to be declared.
invalid upon any strained or doubtful construction.

---

*Inventions — Distinction between Process and Machine.—As to dis-
tinction between inventions of mechanism, articles, or products, and.
processes, see editorial note to Corning v. Burden, 14 L. ed. U. S. 683.

5. The Commissioner of Patents in all matters involving the validity and patentability of claims and priority of invention exercises only an appellate jurisdiction; but in matters of practice and procedure, not involving the merits and final rejection of claims, he acts in his supervisory capacity as head of the Patent Office, and his action is final, and not reviewable on appeal.

No. 1272.    Submitted April 14, 1903.    Decided May 5, 1903.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia, dismissing a petition for a writ of mandamus against the Commissioner of Patents.                                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Albert G. Davis* and *Mr. Melville Church* for the appellant.

*Mr. John M. Coil* for the Commissioner of Patents.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is from a judgment of the supreme court of this District dismissing the petition of the appellant for a writ of mandamus against the Commissioner of Patents, requiring him to direct the primary examiner in the Patent Office to forward to the board of examiners-in-chief an appeal prayed for in the matter of the application for a patent pending in said office, relating to improvements in motor meters.

It is shown by the petition and answer to the rule prayed thereon, that on the 21st day of November, 1896, the appellant filed in the Patent Office an application for a patent for his invention of new and useful improvements in motor meters. This application contained, and still contains, thirteen claims that relate to the alleged invention. Of these several claims, 1 to 6, inclusive, are directed to the novel method or process involved in the working of the invention; and claims 7 to 13,

58      UNITED STATES ex rel. STEINMETZ v. ALLEN.

Opinion of the Court.                    [22 App.

inclusive, are directed to the novel means or apparatus by which such method is carried into practice.

This application was in charge of a primary examiner of the office for examination, and on the 9th day of October, 1899, this primary examiner wrote to the appellant in regard to his application, requiring division, under rule 41 of the office, between the process claims and the apparatus claims, before further action would be taken in respect to the merits of the claims. On December 15, 1899, the appellant asked that his process claims be placed in interference with claims in a patent issued to one Duncan. In his letter the appellant said: "It is therefore requested that the requirement for division be waived for the present, in order that an interference with the patent to Duncan above referred to may be declared."

In reply to this request of the appellant, the examiner informed the appellant, by letter of January 2, 1900, that "pending the determination of the interference, applicant may retain the method and apparatus claims *in the case,* but the acceptance of an interference on one of the method claims will be held by the office to be an election of the prosecution of the method claims, and further prosecution of the apparatus claims *in this application* will not be permitted."

To this letter of the examiner the appellant, by letter of January 19, 1900, replied that "it is respectfully requested that the interference with the Duncan patent, No. 604,464, be declared as soon as possible."

The interference was thereupon declared February 7, 1900, and decision therein was in favor of the appellant and against Duncan. It was after that decision that the examiner wrote to the appellant the letter of May 15, 1900, in which he said: "In accordance with office letter of January 2, 1900, applicant is required to cancel *from this case* all claims except those for the method."

After this, that is to say, on July 16, 1900, the appellant asked for a reconsideration of this action of the office, but the examiner repeated the action, and refused to act upon the merits of the

UNITED STATES ex rel. STEINMETZ v. ALLEN.     59

D. C.]                Opinion of the Court.

application until the division was made in accordance with the requirement.

The appellant then, that is, on August 4, 1900, filed what purported to be an appeal to the examiners-in-chief from the alleged rejection of his apparatus claims. But this appeal the examiner refused to answer and forward, because, as he contended, no appeal in such state of case to the examiners-in-chief was authorized. Whereupon, on August 20, 1900, the appellant petitioned the Commissioner of Patents to direct the examiner to answer and forward the appeal, but this application was denied by the Assistant Commissioner, who, in his opinion, said that "it has been the practice for the past thirty years to treat the question not as one of merits and appealable to the examiners-in-chief, but as a proper matter for petition to the Commissioner. I see no reason for overturning this practice." On the 10th day of January, 1902, a like petition was presented to the present Commissioner of Patents, the respondent herein, and on the 7th day of February, 1902, such petition was likewise denied. In the opinion of the Commissioner of Patents, denying this application, he said: "The requirement for division is clearly a matter of form, and not involving the merits of the claims, since the claims may be, and in the present case are, regarded as allowable. The examiner has not refused to grant a patent to this applicant upon any of the claims presented, but has merely required that they be included in two patents instead of one. It is a question of procedure or of the manner of securing the protection which is in controversy, and not the right of the applicant to a patent upon any of the claims presented.

"The examiner was right in taking the position that the question involved is not appealable to the examiners-in-chief; and although it is a general rule of law that the appellate tribunal is the one to determine whether or not it has jurisdiction when an appeal is taken to it, it is not considered necessary in the office practice to follow that practice strictly, since the Commissioner is the head of the office, and has the final decision upon all questions arising within it, and may settle questions of this kind upon

60    UNITED STATES ex rel. STEINMETZ v. ALLEN.

Opinion of the Court.                    [22 App.

direct petition.   The examiner's decision upon the question
whether or not an appeal to the examiners-in-chief is regular
and proper is not final, since it may be reviewed by the Com-
missioner upon petition, but he has authority to pass upon the
question in the first instance."

The appellant, regarding the action of the primary examiner
as an adverse decision of his right to a patent, and as a rejection
of his application, on the 28th day of February, 1902, applied
by petition directly to the board of examiners-in-chief to take
jurisdiction of his appeal; but this petition was, on the 6th of
March, 1902, also denied, on the ground that the examiners-in-
chief could not, under the rules of the Patent Office, revise and
determine the validity of the action of the primary examiner,
without the latter's answer to the appeal, and, further, because
of the previous action of the Commissioner of Patents in the
premises.

Upon these proceedings in the Patent Office, the appellant
applied to the court below for a mandamus to the Commissioner
of Patents, requiring the latter to order and direct the primary
examiner to answer and forward the appellant's appeal to the
examiners-in-chief, to the end that said examiners-in-chief may
review the action of said primary examiner in the premises.   A
rule was laid and the Commissioner answered.

The respondent, the Commissioner of Patents, in answering
the petition for the writ, denied and controverted the ground
upon which the writ was sought; and, in his answer, he referred
to the provisions of the statute law upon the subject, and to the
various rules of practice of the Patent Office, whereby he claims
and insists that the proceedings in the Patent Office in all re-
spects conformed to, and were in strict compliance with, the pro-
visions of the statute law upon the subject, and with the rules of
practice made in pursuance of the statute; and therefore, as he
contends, there is no ground whatever for the issuance of the
writ.   The appellant moved for the writ, notwithstanding the
matter contained in the answer; and the court, upon hearing,
concurred in the views that prevailed in the Patent Office, and

therefore denied the writ and dismissed the application therefor; and from which order the relator has appealed to this court.

It is incumbent upon the appellant, in a case like the present, to show clearly and affirmatively that there was not only a right of appeal, but that such right has been denied to the applicant under circumstances that entitle him to a mandamus to enforce the right. Or, as said by the Supreme Court of the United States, in *Ex parte Cutting,* 94 U. S. 14, 20, 24 L. ed. 49, 50, "To entitle the petitioners to the writ asked for in this case, they must show that they have a clear right to an appeal which has been refused by the circuit court. The office of a mandamus is to compel the performance of a plain and positive duty. It is issued upon the application of one who has a clear right to demand such a performance, and who has no other adequate remedy. It is never granted in anticipation of an omission of duty, but only after actual default." This principle is laid down in many authorities, but is nowhere better summed up than in High in his work on Extraordinary Legal Remedies, in § 246, where the author says: "But to warrant the interference in this class of cases it must appear that the person seeking the relief is clearly entitled to an appeal, and when this does not appear, the writ will be refused. And mandamus will not lie to compel a court to settle a statement for the purposes of an appeal from a judgment which is only interlocutory and from which no appeal lies." Nor will the writ go to compel the allowance of an appeal from orders, the granting of which rests wholly within the discretion of the court.

The question then is whether the right of appeal in this case is thus clearly shown to exist, and whether mandamus is the proper remedy for its refusal to the applicant. This question depends upon the proper construction of certain sections of the Revised Statutes of the United States, and of certain rules of practice made to govern the course of proceeding in the Patent Office.

Section 4909, Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 3390), provides that "every applicant for a patent or for the reissue of a patent, any of the claims of which

have been *twice rejected,* and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the board of examiners-in-chief, having once paid the fee for such appeal." And by § 4910 (U. S. Comp. Stat. 1901, p. 3391) it is provided that "if such party is dissatisfied with the decision of the examiners-in-chief, he may, on payment of the fee prescribed, appeal to the Commissioner in person."

The right of appeal thus given only exists where claims in the application for a patent, or some of them, have been twice considered and rejected by the primary examiner. And the question here is whether any of the claims in the application of the appellant have been twice considered and rejected by the primary examiner, within the sense and meaning of the provisions of the statute. It is not denied that, to constitute a rejection of the claims within the meaning of the statute, the action or decision of the primary examiner must amount, in legal effect, to an adverse decision in respect to the merits of the claim, and be of a character to defeat the right to a patent therefor, unless reversed on appeal. There was no question made in the Patent Office as to the validity or sufficiency of any of the thirteen claims contained in the application to entitle the applicant to a patent therefor; but because they related to different subjects-matter— one portion of them to process and the other to apparatus—the applicant was required to divide the claims, or, in the language of the primary examiner in his letter to the applicant, the latter was required to cancel *in this case* the apparatus claims, leaving the party to his right to make a separate application for a patent for those claims. There was no definitive adverse decision against the claims or against their patentability. The primary examiner had no power to make such decision without examination of the merits of the claims and twice rejecting them, because of the want of patentability, and this was not done, nor was it intended to be done; and such was the understanding and construction of the proceeding in the Patent Office; the requirement being simply that the application stand as for the process claims, and that the apparatus claims be presented in a sep-

UNITED STATES ex rel. STEINMETZ v. ALLEN.    63

D. C.]                    Opinion of the Court.

arate application. This requirement the applicant refused to comply with, and the question is whether there was power, under the statute and the rules of the Patent Office, to make the required division of the claims, and to insist upon the enforcement of it.

It must be borne in mind that a patent for a process, and a patent for a machine or apparatus with which to effect a given result, are very different things. A process is the mode of treatment of certain materials to produce a certain result, and consists of an act or series of acts performed upon the subject-matter to be transformed and reduced to a different state of things; whereas a machine or apparatus is a combination of mechanical elements which may or may not be useful in performing the acts which constitute the process. *Cochrane* v. *Deener,* 94 U. S. 780, 788, 24 L. ed. 139, 142; *James* v. *Campbell,* 104 U. S. 356, 377, 26 L. ed. 786, 794. As said in the last-mentioned case, a process and a machine for applying the process are not necessarily one and the same invention. They are generally distinct and different. And this well-recognized distinction is provided for in the rules of the Patent Office.

Before referring to the rules of practice bearing upon this question, it may be proper that we refer to the sections of the Revised Statutes that confer authority to make such rules.

Section 481, Rev. Stat. (U. S. Comp. Stat. 1901, p. 271), provides that "the Commissioner of Patents, under the direction of the Secretary of the Interior, shall superintend or perform all duties respecting the granting and issuing of patents directed by law, and he shall have charge of all books, records, papers, models, machines, and other things belonging to the Patent Office." By § 482 (U. S. Comp. Stat. 1901, p. 272) it is provided that "the examiners-in-chief shall be persons of competent legal knowledge and scientific ability, whose duty it shall be on the written petition of the appellant to revise and determine upon the *validity of the adverse decisions of examiners upon applications for patents,* and for reissues of patents, and in interference cases; and, when required by the Commissioner, they shall hear and report upon claims for extensions, and perform

64        UNITED STATES ex rel. STEINMETZ v. ALLEN.

Opinion of the Court.                    [22 App.

such other like duties as he may assign them." And by § 483 (U. S. Comp. Stat. 1901, p. 272) it is provided that "the Commissioner of Patents, subject to the approval of the Secretary of the Interior, may from time to time establish regulations, *not inconsistent with law,* for the conduct of proceedings in the Patent Office."

It is to be observed and borne in mind that the right of appeal given by § 4909 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3390) is given in general terms, and only when some of the claims of the applicant have been rejected; that is, as we have shown, have been considered and twice rejected on their merits, as not being patentable for some of the causes designated by the statute. If appeals were allowed in all cases of mere preliminary or interlocutory orders, as well as in cases of adverse decisions on the merits of the claims, it is not difficult to see that great delays, expense, and embarrassments would be produced in conducting proceedings in the Patent Office. If appeals would lie in such cases to the examiners-in-chief, they would equally lie to the Commissioner from the examiners-in-chief, and from the Commissioner to this court. That was clearly never intended by Congress in the use of the general terms that appear in the section of the Revised Statutes. Nor has that been the understanding of the officials charged with the administration of the affairs of the Patent Office.

We shall now refer to and recite certain of the rules made to regulate the conduct of the proceedings in that office.

Rule 41 is as follows: "Two or more independent inventions cannot be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application. *Claims for a machine and its product must be presented in separate applications. Claims for a machine and the process in the performance of which the machine is used must be presented in separate applications.* Claims for a process and its product may be presented in the same application." And rule 42 provides the mode of proceeding to effect division of claims when proper to be made. That rule provides that "if

several inventions claimed in a single application be of such a nature that a single patent may not be issued to cover them, the inventor will be required to limit the description, drawing, and claim of the pending application to whichever invention he may elect.   The other inventions may be made the subjects of separate applications, which must conform to the rules applicable to original applications.   If the independence of the inventions be clear, *such limitation will be made before any action upon the merits;* otherwise it may be made at any time before final action thereon, in the discretion of the examiner."

Rules 133 and 134 have an important bearing upon the question under consideration.   They are intended to regulate appeals that are prosecuted in the Patent Office, and they show under what conditions appeals are allowed, and from what nature of decisions they can be taken.

Rule 133 provides that "every applicant for a patent, any of the claims of whose application have been twice rejected for the same reasons, *upon grounds involving the merits of the invention,* such as lack of invention, novelty, or utility, or on the ground of abandonment, public use or sale, inoperativeness of invention, aggregation of elements, incomplete combination of elements, or, when amended, for want of identity with the invention originally disclosed, or because the amendment involves a departure from the invention originally presented;   *   *   *   may, upon payment of a fee of $10, appeal from the decision of the primary examiner to the examiners-in-chief."   *   *   *

And rule 134 provides that "there must have been two rejections of the claims as originally filed, or, if amended in matter of substance, of the amended claims, and *all the claims must have been passed upon, and all preliminary and intermediate questions relating to matters not affecting the merits of the invention settled, before the case can be appealed to the examiners-in-chief."*

We have carefully scrutinized these several rules, and we perceive nothing in them that can, by any fair and reasonable construction, be held to be inconsistent with the provisions of the

68        UNITED STATES ex rel. STEINMETZ v. ALLEN.

Opinion of the Court.                    [22 App.

statute relating to the patent system. If there be no such inconsistency with the express provisions of the statute, the rules are valid and have the force and effect of law, in all matters to which they relate. They are certainly not to be declared invalid upon any strained or doubtful construction, but only for such conflict or inconsistency with the statute law upon the subject as shall be made plainly to appear. These rules, with many others, forming a system of practical procedure for the Patent Office were adopted by able and experienced patent lawyers who occupied the position of Commissioner of Patents, and they have been in force for many years, and the practice of the office has been made to conform to them. To support at this late day the contention of the appellant, and declare these rules in any material respect invalid, upon the theory that they restrict the right of appeal, would be attended with very serious consequences to the Patent Office,—indeed to the public. An established practice, such as has obtained under these rules, ought not to be disturbed by the courts, except upon the clearest principle of right and necessity. The rule authorizing division of claims to be made is one of great importance in conducting the business of the office. Without such rule it would be difficult, if not impossible, to make and maintain such essential classification of the subjects of claims as would enable the office to observe and carry out the policy of the law in making full and complete examinations as to the novelty and priority of every claim that is presented for a patent. This is a matter in which the public is greatly interested. It may be, sometimes, difficult to determine upon a proper division among claims presented in a single application. But, as said by the Supreme Court, in the case of *Bennet* v. *Fowler,* 8 Wall. 445, 19 L. ed. 431, "It is difficult, perhaps impossible, to lay down any general rule by which to determine when a given invention or improvement shall be embraced in one, two, or more patents. Some discretion must necessarily be left on this subject to the head of the Patent Office. It is often a nice and perplexing question."

This case of *Bennet* v. *Fowler* recognizes the right of division of claims and the power over the subject as being in the Com-

missioner as head of the office. Being a matter of form and procedure, the power over it is vested in the Commissioner as belonging to his supervisory power given him by the statute. His determination of such question, under the rule, is final, and not reviewable by any authority in the Patent Office. In all matters involving the validity and patentability of claims and priority of invention, he exercises only an appellate jurisdiction. But in matters of practice and procedure not involving the merits and final rejection of claims, he acts in his supervisory capacity as head of the office. There must be some limit to the right of a party to have joined several and different claims in a single patent; and that being so, who is to decide the question when the division should or should not be made? The Commissioner as the head of the office is intrusted with the ultimate exercise of that power under the rules, and, it would seem, most appropriately so. The decision of the question of division in some cases may be difficult to make, it is true, but still the question must be decided as a preliminary one and as one of procedure merely. And as a regulation of such procedure rule 45 provides that "upon receiving a petition stating concisely and clearly any proper question which has been twice acted upon by the examiner, and which *does not involve the merits of the invention claimed,* and also stating the facts involved and the point or points to be reviewed, an order will be made fixing a time for hearing such petition by the Commissioner, and directing the examiner to furnish a written statement of the grounds of his decision upon the matters averred in such petition within, etc. The examiner shall, at the time of making such statement, furnish a copy thereof to the petitioner. No fee is required for such petition."

It was under this rule that the appellant petitioned the Commissioner to review and reverse the action of the primary examiner in requiring a division of the claims. And the decision of the Commissioner upon that application was final and conclusive upon the subject, as to the application for the patent then pending. The appellant was bound to make the division as required, and the decision of the Commissioner approving the

action of the examiner cannot be reversed and the Commissioner required to direct the examiner to answer and forward the appeal to the examiners-in-chief as prayed by the appellant. There is no ground shown for a mandamus, and the order appealed from, dismissing the petition therefor, must be affirmed; and it is so ordered.                                   *Judgment affirmed.*